

NO. 08-CR-001191          19 JUL 18 PM 12: 33          **JEFFERSON CIRCUIT COURT**
                                                        **JUDGE BARRY WILLETT**
                                                        **CIRCUIT COURT (1)**

**COMMONWEALTH OF KENTUCKY**

**V.**                    **NOTICE-MOTION-ORDER**

**MARK DAMIAN YARMEY**                                    **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Take notice that the undersigned shall tender the following motion on the 4 day of

March , 2013, at 8:30 a.m. in the courtroom of the above court.

**CERTIFICATE**

It is hereby certified that a copy of the foregoing was mailed to the following this 27 day

of February, 2013:

COMMONWEALTH'S ATTORNEY
30th Judicial District
Hon. Thomas Wine
514 W. Liberty Street
Louisville, Kentucky

and

KENTUCKY ATTORNEY GENERAL
Jack Conway
Office of the Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601

and

JAMES FALK
Bush Law Group, P.C.
3 Broad Street, Suite 450
Charleston, SC 29401

## 11.42 MOTION

Comes the Defendant, Mark D. Yarmey, by counsel, and moves the Court to vacate, set aside or correct his sentence for the above indictment pursuant to Ky. R.Cr.11.42.

## PROCEDURAL HISTORY

On April 10, 2008, Mark Damien Yarmey (hereinafter referred to variously as Defendant or Mr. Yarmey), was indicted by the Jefferson County Grand Jury by direct submission for the offense(s) of Sodomy in the First Degree, pursuant to KRS §510.070 and Use of a Minor in a Sexual Performance, pursuant to KRS §531.310.

Sodomy in the First Degree is defined as follows:

"(1) A person is guilty of sodomy in the first degree when:

(a) He engages in deviate sexual intercourse with another person by forcible compulsion; or

(b) He engages in deviate sexual intercourse with another person who is incapable of consent because he:

1. Is physically helpless; or

2. Is less than twelve (12) years old.

(2) Sodomy in the first degree is a Class B felony unless the victim is under twelve (12) years old or receives a serious physical injury in which case it is a Class A felony."

Due to the alleged age of the complaining witness, Mr. Yarmey's maximum penalty was a Class A felony which carried a term of 20 to 50 years to life imprisonment.

Deviate Sexual Intercourse, pursuant to KRS §510.010(1), is defined as:

"any act of sexual gratification involving the sex organs of one person and the mouth or anus of another; or penetration of the anus of one person by a foreign

object manipulated by another person. "Deviate sexual intercourse" does not include penetration of the anus by a foreign object in the course of the performance of generally recognized health-care practices."

Use of a Minor in a Sexual Performance, pursuant to KRS §531.310, is defined as follows:

"(1) A person is guilty of the use of a minor in a sexual performance if he employs, consents to, authorizes or induces a minor to engage in a sexual performance.

(2) Use of a minor in a sexual performance is:

(a) A Class C felony if the minor so used is less than eighteen (18) years old at the time the minor engages in the prohibited activity;

(b) A Class B felony if the minor so used is less than sixteen (16) years old at the time the minor engages in the prohibited activity; and

(c) A Class A felony if the minor so used incurs physical injury thereby."

Mr. Yarmey was prosecuted under section (2)(b),which is a Class B felony and carries a penalty of 10 to 20 years imprisonment.  Further, a conviction for Use of Minor in a Sexual Performance is not parole eligible until a convicted Defendant has served 85% of his sentence and the Defendant is not entitled to "good time" credits.   (See KRS §439.3401).

On March 25, 2008, the complaining witness, Erin M. Brannick (hereinafter referred to as CW or Brannick, or in the trial tapes as Michelle) presented herself to the Louisville Metro Police Department, Crimes Against Children Unit, and asked to speak to a detective.   Ms. Brannick met with Det. Angela Merrick and relayed to her that approximately ten (10) years earlier, in either 1998 or 1999, Mr. Yarmey had taken pictures of her pursuant to the request of Ms. Brannick's mother, Cindy Brannick.  (Trial tape vr #212 4, 12-9-09 at 3:42:59.) (Trial Tape vr#213 7, 12-10-09, at 2:18:01 p.m.).   According to Brannick, her mother wanted a modeling portfolio

created and took her to a person she knew had a camera, Mark Yarmey.   (Trial Tape vr #212 4, 12-9-09 at 3:13:12 p.m.).   The Brannick's knew Mr. Yarmey from church and from his occasional help around their home due to Cindy Brannick's disability.   Mr. Yarmey occasionally drove the Brannick's to church, mowed their yard, or did other handyman projects around the home.   There was no sexual relationship between Mr. Yarmey and Cindy Brannick, and any services Mr. Yarmey performed for the Brannicks was done out of friendship, obligation from church, or simple kindness.   (Trial Tape vr #214 7, 12-11-09 at 2:07:00 p.m.).

Erin Brannick testified that after she and her mother arrived at Mr. Yarmey's house, her mother and Mr. Yarmey discussed what pictures would be necessary and there were at least two wardrobe changes by Ms. Brannick, once into a leopard pattern bikini and then into one of Mr. Yarmey's blue dress shirts.   Ms. Brannick further testified that when these photos were taken, perfume bottles were placed under her breasts in order to give her more cleavage.   (Trial Tape vr #212 4, 12-9-09 at 3:12:41 p.m. through 3:18:25 p.m.).

On the night in question, which cannot be conclusively determined, it is undisputed that Mr. Yarmey took pictures of Erin Brannick.   Those pictures were introduced into evidence over the Defendant's motion in limine to suppress and renewed motion at trial.   (Defendant's Motion in Limine, renewed at trial, see Trial Tape vr #212 4, 12-2-09 at 3:22:54 p.m.).   Mr. Yarmey admitted to taking the photos which were introduced into evidence; but denied, on all occasions, of taking any nude pictures of Erin Brannick. (Trial Tape vr #214 7, 12-11-09 at 3:01:00 p.m.)

Cindy Brannick did not testify at trial.   Erin Brannick testified that her mother Cindy was present for the first 7 pictures, introduced as Commonwealth's Exhibit 1 – 7 at trial, that after these pictures were taken, Mr. Yarmey and her mother stepped into another room, had a short conversation and then Cindy Brannick left.

Erin Brannick testified that after her mother left her with Mr. Yarmey, he proceeded to ask her, "have you ever sucked a dick?" and then proceeded to force her to her knees and forced her to perform oral sex on him until he ejaculated in her mouth. According to Erin Brannick's testimony, Mr. Yarmey then continued to take pictures for a total of up to 25 pictures. Erin Brannick further testified that all pictures taken after her mother left were of her in various phases of undress, up to and including complete nudity. According to Ms. Brannick, Mr. Yarmey then took those Polaroid pictures into the next room, where a computer and scanner were located.

Ms. Brannick testified that Mr. Yarmey scanned at least one of the naked pictures of her into his computer and proceeded to show her that the image could be manipulated, and used a program to cover her breasts. After seeing that this upset her, Mr. Yarmey allegedly threw the pictures into a trashcan and took her home. (Trial Tape vr#212 4, 12-9-09 at 3:28:30 p.m. through 3:36:00 p.m.).

Ms. Brannick testified that she never returned to Mr. Yarmey's home or was alone with him again. All of these events which resulted in Mr. Yarmey's indictment are limited to this single occasion.

Despite Erin Brannick's testimony of at least one of the pictures being scanned into the computer and manipulated, a search of the computer hard drives found in Mr. Yarmey's home and a review by the National Center for Missing and Exploited Children turned up no additional photos and only the 7 photos that were in Cindy Brannick's possession were introduced as evidence at trial or were ever found.

Sometime in 2004, Cindy and Erin Brannick went to the Louisville Metro Police Department Crimes Against Children Unit and spoke to a detective, allegedly about Mr. Yarmey. Erin Brannick testified that at this meeting, the Detective informed them that a controlled

telephone call and/or a forensic interview would need to be conducted.   Erin Brannick testified that her mother never took her for the interview or contacted the police again.   For whatever reason, the forensic interview never occurred and the file was closed and marked as unsubstantiated.   Other than Erin Brannick's testimony, there is no proof, one way or the other, as to the reason why no additional actions were taken by the Louisville Metro Police Department in 2004.   (Trial Tape vr #212 4, 12-9-09 at 3:38:00 through 3:40:00).

At the time that Erin Brannick spoke to Det. Merrick in 2008, she allegedly did not have the 7 pictures in her possession and stated that she did not know where they were.   After speaking with Det. Merrick, she and her husband went to the home they shared with her mother and searched her mother's nightstand drawer and miraculously found the pictures, ten years after they were taken and in the home she shared with her mother.   (Trial Tape vr #212 4, 12-9-09 at 3:45:50 through 3:46:12).

Erin Brannick took these pictures to Det. Merrick and thereafter a controlled call was made to Mr. Yarmey by Erin Brannick under the direction of Det. Merrick, a conversation in which he had difficulty remembering her, or the events of ten (10) years before.   (Trial Tape vr #213 3, 12-10-09 at 10:43:09 through 10:54:55).

Based on the telephone call, the statement of Ms. Brannick and the pictures, Det. Merrick obtained an arrest warrant and search warrant for Mr. Yarmey's home.   Mr. Yarmey was taken into custody by the Louisville Metro Police Department where he was interrogated by Det. Merrick about the events from ten (10) years before.

At the same time, officers executed the search warrant at Mr. Yarmey's home and confiscated a plethora of video, camera, and computer equipment.   Despite this extensive and exhaustive physical search, and a subsequent computer forensic search, no evidence of child

pornography was found, nor were any pictures of Erin Brannick found.

Mr. Yarmey, after his arrest, signed a Miranda waiver form and agreed to speak with the detectives investigating Erin Brannick's allegations. At no time during any phone call, interview, interrogation or during his testimony did Mr. Yarmey ever admit to any inappropriate touching of Erin Brannick nor did he admit to taking any nude or naked pictures of Erin Brannick and in fact, he adamantly denied ever doing either. Despite the tactics of the investigating officer to lure or trick Mr. Yarmey into an admission, Mr. Yarmey stayed with the truth and denied the allegations.

After the interrogation of Mr. Yarmey the above listed indictment was filed.

On May 18, 2009, trial counsel for Mr. Yarmey filed a motion in limine seeking to exclude the introduction of the 7 pictures. This motion was overruled and the evidence was admitted at trial as Commonwealth's Exhibits 1 – 7.

Trial of this matter began on December 8, 2009, in Jefferson Circuit Court, Division One, Honorable Barry Willett presiding. At trial, Mr. Yarmey testified that he did take the pictures identified as Exhibits 1 – 7, that Cindy Brannick was there when those pictures were taken, that she directed what type of pose she wanted, that she left after the pictures were taken and left Erin with him because she had some errand to take care of or didn't feel good, that he took Erin home and finally, he adamantly denied take any pictures beyond the 7 in Cindy Brannick's possession and adamantly denied inappropriately touching Erin Brannick.

After several days of trial the case was submitted to the jury for consideration. The jury ultimately returned a verdict of guilt on the charge of Use of a Minor in a Sexual Performance but was unable to reach a unanimous verdict on the Sodomy in the First Degree charge. The Court declared a mistrial on count one of the indictment, Sodomy in the First Degree, based upon manifest necessity. (Order declaring mistrial, entered December 18, 2009, Page 88 of the

Jefferson Circuit Court file).

The parties reached an agreement and Mr. Yarmey entered a conditional plea on December 15, 2009 to the charge of Use of a Minor in a Sexual Performance for a total sentence of 15 years. This conditional plea waived all issues for appeal with the exception of the following:

1.    "However, the defendant may appeal the Court's pretrial evidentiary ruling concerning the admissibility of CW exhibit 1 – 7."

2.    "The defendant may also appeal the court's ruling concerning the defendant's proposed limiting instruction." And,

3.    "Defendant may also appeal the Court's ruling prohibiting the admissibility of victim's prior rape.  No other issue may be appealed." See Commonwealth's Offer on a Plea of Guilty, attached hereto.

Mr. Yarmey was sentenced under this agreement on March 1, 2010.  See Judgment of Conviction, Sex Offender, Violent Offender, Conditional Plea Pursuant to RCr 8.09.

## LAW

To prevail on a claim of ineffective assistance of counsel, Mr. Yarmey must fulfill two requirements.

First, he must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"[T]he proper standard for attorney performance is that of reasonably effective

assistance." Id.   An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. (Internal citation omitted). Id. at 691-692. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Additionally, "a hearing is required only if there is an issue of fact which cannot be determined on the face of the record." *Stanford v. Commonwealth*, 854 S.W.2d 742, 743-744 (Ky. 1993).

## ARGUMENT

1.      **Trial counsel was deficient by failing to, (1) conduct an adequate investigation of the case and inspection of evidence to determine if the camera still contained photos, (2) request the Court to instruct and inform the jury about the number and nature of photos in the camera after photos were discovered and (3) request a mistrial to allow time for examination of the newly discovered photographic evidence to determine their nature and origin, including whether or not they originated from the same package as other photos.**

At trial, outside the presence of the jury, while handling the evidence, the Assistant

Commonwealth Attorney, Jon Heck, took a photo with Mr. Yarmey's camera.   Only at that point

was it discovered that the camera still contained film. Ultimately, all of the remaining photos were

ejected from the camera, a total of three.   Then the photo pack was ejected from the camera.   The

parties and Court agreed to inform the jury of this fact, and stipulated that the photo pack in the

camera held ten photos prior to any usage.   However, the stipulation did not include the

information that three photos had been in the camera until they were ejected by the commonwealth

attorney.

The Court instructed the jury as follows:

"Ladies and gentlemen, the parties have reached an agreement on issues of fact.   We call it

a stipulation.   This camera, a Polaroid model 600, generates a photo that looks like the one that

will be introduced into evidence, I suppose, and that this camera uses an instant photo pack that

goes in containing 10 photos that come out.

So, two part stipulation:   This is what comes out of the camera, this size photo, and that

this camera is able to produce, using a full pack, 10 of these."

The idea that the Commonwealth or the Louisville Metro Police Department failed to

determine if the camera had film remaining in it is mind boggling.

When it became known to trial counsel that the camera contained film, a motion for a

mistrial should have been requested so the film pack could be compared and submitted to an expert

to determine if the camera film pack and the pictures in evidence originated from the same film

pack.

Ms. Brannick testified that numerous other photos were taken the same evening after the

pictures introduced into evidence.   However, Mr. Yarmey specifically denied this allegation and

those alleged photos were never found.

If trial counsel had requested a mistrial based upon this "new" evidence and the negligent testing and examination of the camera and its contents by the Louisville Metro Police Department and the Commonwealth, it is likely the Court would have granted Mr. Yarmey the opportunity to review this evidence and submit it to expert examination.   Such an examination would have shown that the pictures in evidence and the pictures remaining in the photo pack were siblings originating from the same photo package at creation.   This comparison of the pictures in the photo pack would show that Ms. Brannick was not truthful about subsequent pictures, leaving her entire testimony subject to serious attack based upon its falsity.

Likewise, once trial counsel learned the number of photos remaining in the camera, he should have made this argument known to the jury and demanded that the number of photos in the camera be made known to the jury.   A stipulation would be the only way to make this fact known since Mr. Heck could not be called as a witness to establish this fact.

It was, and is, Mr. Yarmey's contention that the only photos he took were the 7 in evidence and that the photo pack in the camera was the same one used to take the original pictures of Ms. Brannick.   The Commonwealth submitted the camera into evidence as the one used to take the pictures of Ms. Brannick.   The failure to do anything with, or about, this critical piece of evidence, either by the Commonwealth or Trial Counsel is wrong on its face, wrong after thoughtful analysis and wrong to even a casual observer.

An underlying fact in the trial was the existence of additional photos Ms. Brannick claimed were taken and which showed her in various stages of undress.   The only evidence of these other photos was Ms. Brannick's testimony, yet their existence haunted the proceedings.   The only charge the jury could agree on was Use of a Minor in a Sexual Performance, which by its very nature indicates that the jury believed the other photos existed. Failure to explore this issue denied

Mr. Yarmey a fair trial.

If the pictures had all been taken at the request of the Defendant, the fact that 3 remained out of a pack of 10 and 7 photos were in evidence would have been a factor that the jury would have found compelling and which would have changed the outcome.

This failure is not mere conjecture nor is it speculative; it is concrete, articulable and clearly prejudiced the proceedings.

The failures of the Prosecution and of trial counsel regarding this critical piece of evidence are mind boggling.   If trial counsel had done any of the foregoing it would have changed the trial result.   The failure to do any of these precluded Mr. Yarmey from having a fair trial and robbed him of the guarantee of a fair trial.

If trial counsel's purpose was to preserve and protect Mr. Yarmey's rights to a fair trial, he failed miserably in this regard and this fact alone is sufficient to justify a new trial in this matter.


2.      **Counsel was ineffective in his general presentation due to a prior automobile accident and the prescribed narcotics he was under during trial.**

Prior to trial of this matter, Mr. Falk was involved in a tragic automobile accident which resulted in the death of his father and serious injuries to himself.   The original trial date had to be continued due to Mr. Falk's injuries.

Apparently while in Charleston, South Carolina, for the purpose of moving his family and practice to South Carolina, Mr. Falk was involved in the aforementioned automobile accident.

By the time trial actually occurred in December, 2009, Mr. Falk had finalized the relocation of his home and practice to South Carolina and he actually drove back and forth to Kentucky for the trial.   Additionally, Mr. Falk was still suffering from injuries from the wreck,

including a serious back injury sustained in the accident, and was taking prescription pain killers. During the course of the trial, Mr. Falk would leave the courtroom and go to the hallway outside the courtroom.   Since he was unable to open the pill bottle, Mr. Yarmey's son, John, would open the bottle for him.   The bottle was clearly labeled with instructions not to operate heavy equipment or motor vehicles, that it could cause dizziness or drowsiness and not to take alcohol with it.   (See Affidavit of John Yarmey, attached hereto).

During the course of the trial, as one watches it, it is clear that trial counsel is operating under a disability.   The lack of coherent questions, articulable strategy or any effort besides simply sitting in court are patently obvious.

The lack of preparation and inability to communicate with the jury goes beyond mere trial strategy.   Trial counsel made a number of errors during the course of the trial that viewed singularly and alone do not constitute ineffectiveness, but when viewed in total, clearly demonstrate that Mr. Falk was operating under a disability and was ineffective as counsel as defined by *Strickland*.

Examples of these inexplicable acts by trial counsel are as follows:

a.      Failed to illicit testimony that no images of Brannick were found on Mr. Yarmey's computer, either by direct testimony or by expert witness.   No images of Ms. Brannick were found on Mr. Yarmey's computer or in his possession.   Although a forensic exam was performed on the computer, Trial Counsel failed to question Detective Merrick about this fact or to secure an expert witness, despite the explicit instructions of Mr. Yarmey, to testify regarding this fact.

b.      Failed to raise objections during voir dire on improper questions of the prosecution. Including asking if anyone had ever taken painted or taken pictures of naked children, which elicited the statement from the Court that it had no idea what that had to do with the issues at trail.

c.      Failure to object to, or clarify to the jury, that the scanner in evidence could not have been used as it was manufactured years after the alleged events.   During the trial, a scanner was presented as evidence and left out as evidence taken from Mr. Yarmey's home.   However, as could easily be ascertained, the scanner in question was manufactured too late to have been present in Mr. Yarmey's home at the time in question.   No objection to their admissibility was made, nor was any testimony elicited to show that the scanner was manufactured many years after the event claimed.   This failure unfairly placed in the juries mind that the scanner in court was the scanner Mr. Yarmey allegedly used.

d.      Failed to point out to the jury the sarcastic nature of Mr. Yarmey's statement in recorded telephone call.   During the controlled phone call by Ms. Brannick to Mr. Yarmey, she asked if her were afraid to say anything because he might incriminate himself.   Mr. Yarmey replied, "Yes, that's it."   This comment was clearly a sarcastic reply from Mr. Yarmey which the prosecution used to claim that Mr. Yarmey made an admission.   Trial counsel failed to explore this or make the jury aware of the sarcastic nature of this comment.

e.      Failed to reserve Ms. Brannick as a witness for recall.   At the end of Ms. Brannick's testimony, the Court specifically asked Mr. Falk if he wished to reserve Ms. Brannick as a witness, which he declined to do.   This allowed Ms. Brannick to remain in the Courtroom and be observed by the jury during the entire trial, thereby potentially eliciting sympathy when she could have been required to remain outside the courtroom.

f.      Advised Mr. Yarmey's son to file an 11.42 motion.   After the jury returned its verdict, Mr. Falk turned and advised John Yarmey, Mr. Yarmey's son, that they needed to file an 11.42 motion.   This comment speaks for itself.

**3.      Trial Counsel was Ineffective by his failure to investigate previous claim of rape upon**

**the complaining witness, to request psychological exam on the complaining witness and for failing to follow the rules of civil procedure in presenting the prior unreported sexual assault on the prosecuting witness.**

In discovery, the Commonwealth presented an interview with Ms. Brannick's husband, Gary Sipes.  During this interview, he shared with the detectives that Ms. Brannick had been raped when she lived in Florida but failed to report this to any legal authority.  (Ms. Brannick lived in Florida after the events which form her allegations against Mr. Yarmey but before the trial on those allegations).

Based on this information, trial counsel had an obligation to determine the facts surrounding that event.  Upon learning this fact, trial counsel would have had several options available to him.  First, he could have requested that Ms. Brannick submit to a psychological exam pursuant to *Mack v. Commonwealth, Ky.*, 860 S.W.2d 275 (1993).  Second, an expert witness could have been retained who could have offered the theory that Ms. Brannick was transferring anger towards these unknown assailants, men who were beyond her reach, to Mr. Yarmey, someone who was definitely within her grasp.

Trial counsel did seek to impeach Ms. Brannick with this unreported rape in Florida. The Commonwealth objected on the basis of KRE 412, which provides in pertinent part, as follows:

> **"Rule 412.  Rape and similar cases - Admissibility of victim's character and behavior**
>
> (a) Evidence generally inadmissible. The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subsections (b) and (c):
>
> (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

(2) Evidence offered to prove any alleged victim's sexual predisposition.

(b) Exceptions:

(1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

(A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

(C) any other evidence directly pertaining to the offense charged.

(2) In a civil case, evidence offered to prove the sexual behavior or sexual predisposition of any alleged victim is admissible if it is otherwise admissible under these rules and its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party. Evidence of an alleged victim's reputation is admissible only if it has been placed in controversy by the alleged victim.

(c) Procedure to determine admissibility.

(1) A party intending to offer evidence under subdivision (b) must:

(A) file a written motion at least fourteen (14) days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial; and

(B) serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.

(2) Before admitting evidence under this rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard. The motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise.

After hearing the argument of counsel, the Court sustained the Commonwealth's objection and did not allow any testimony from Ms. Brannick regarding this topic.

Since trial counsel failed to follow the Rules of Criminal Procedure, the evidence was not

presented to the jury.   However, trial counsel did attempt to preserve this issue by having Ms.

Brannick testify by avowal.

        That testimony is as follows:

"Mr. Falk      Q:   Something happened to you one day when you were
                    walking home from school?
Ms. Brannick  A:   (No verbal response).
               Q.   Let me – I'm sorry.  I shouldn't have given it to you that
                    way.   But let's sort of give you the background;   Mr. Sipes
                    told Ms. Merrick that one day when you were coming home
                    from school, you were jumped and attacked and raped?
               A.   I wasn't coming home from school, but, yes.   Okay.
               Q.   That is true?
               A.   Yes.
               Q.   And so this happened when you were in Florida; is that
                    correct?
               A.   Yes. I-
               Q.   Did you go to the police?
               A.   No.
               Q.   Did you ask your mother to go to the police?
               A.   No.
               Q.   Your mother didn't go and you didn't ask her to go; is that
                    correct?
               A.   No.
               Q.   Obvious question:   This was obviously a traumatic
                    experience; is that correct?
               A.   Yes."   (Trial Tape vr#212 5, 12-9-2009, at 04:37:00 to
                    04:38:00).


        Therefore, it is not mere speculation as to whether Ms. Brannick would testify she was

raped in Florida and failed to report it; we know it to be true.

        The failure to present this evidence, or to follow the rules regarding its admissibility

severely hampered Mr. Yarmey's ability to defend himself, to present a defense or even to explore

Ms. Brannick's motivation.

        These failures by trial counsel constitute ineffectiveness of trial counsel which unfairly

prejudiced Mr. Yarmey in the eyes of the jury and violated the guarantees of *Strickland*.

**4.     Counsel failed to explain the negative consequences of allowing, and in fact requested, that Mr. Yarmey waive his 5th Amendment right against self-incrimination and testify on his own behalf and then failed to prepare him to testify.**

At trial of this matter, Mr. Yarmey testified in his own behalf and waived his right against self-incrimination pursuant to the 5th Amendment.   Prior to indictment, but while in custody, Mr. Yarmey waived his 5th Amendment rights after being given a *Miranda* warning and without benefit of counsel was questioned by the investigating detective.   In that interview, which was played at trial, Mr. Yarmey consistently denied the allegations raised by the prosecuting witness.

Trial counsel told Mr. Yarmey he wanted him to testify at trial.   At no time did he explain the reasons for asserting his 5th Amendment rights nor did he explain the possible repercussions of testifying in his own behalf.

Most importantly, prior to his testimony, trial counsel failed to prepare Mr. Yarmey in any way.   Mr. Yarmey did not even have the opportunity to review his previous statement with counsel before testifying.

This failure to explain these negative ramifications and then failing to adequately prepare Mr. Yarmey or even having him read his prior statement led Mr. Yarmey tripping over his own testimony.

This ineffectiveness of trial counsel unfairly prejudiced Mr. Yarmey in the eyes of the jury and violated the guarantees of *Strickland.*

**5.     Trial Counsel was ineffective in that he failed to explain plea form.**

After the jury returned hung on one of the charges, the Commonwealth and trial counsel negotiated a plea agreement.   At no time did Trial Counsel explain this document to Mr. Yarmey, either to explain the limitation on the right of appeal, or the fact that it was a "violent" crime per

I have reviewed this 11.42 motion and it is true and correct.

MARK D. YARMEY

DATE:  2 - 22 - 2013

## AFFIDAVIT

Comes the Affiant, John Robert Yarmey, and being duly sworn, states as follows:

1. I am the son of Mark Yarmey. I am 30 years old and live in Jefferson County, Kentucky.

2. I was present for the entire trial of my father.

3. During the trial, Mr. Falk, my father's attorney, was taking pain medication for injuries he suffered in an automobile accident. Because Mr. Falk couldn't open the bottle containing his medication, so he asked me to.

4. I reviewed this bottle and although I don't remember the name of the medication, I believe it was a narcotic. I believe this because it had warning labels stating not to operate motor vehicles or heavy equipment, that it may cause dizziness or drowsiness and not to take with alcohol.

5. I opened this bottle for him on at least two occasions. Both of these occasion were at the courthouse during the course of the trial.

6. Mr. Falk was actively trying my father's case while he was taking these narcotics.

7. After taking the medication, Mr. Falk would noticeably lose his train of thought and have difficulty focusing on, and remaining on, whatever topic we were talking about.

8. After the jury returned its verdict, Mr. Falk turned around and told Carol Mooney, a friend of Dad's, and myself, that Dad needed to file an 11.42 motion.

Further, Affiant sayeth not.

_____
JOHN ROBERT YARMEY

STATE OF KENTUCKY   )
                    ) SS
COUNTY OF JEFFERSON )

SUBSCRIBED AND SWORN to before me by John Robert Yarmey, this 27th day of February, 2013.

MY COMMISSION expires: _____September 7, 2014_____

_____
NOTARY PUBLIC, STATE AT LARGE, KY.

Kentucky statutes.

This ineffectiveness of trial counsel unfairly prejudiced Mr. Yarmey in the eyes of the jury and violated the guarantees of *Strickland*.

## CONCLUSION

Therefore, Defendant, Mark Yarmey, moves the Court to sign and enter the Order attached hereto setting an evidentiary hearing on his motion for relief pursuant to Ky RcrP. 11.42.

RESPECTFULLY SUBMITTED,


JOSEPH E. BLANDFORD, JR.
Attorney at Law
1387 S. Fourth Street
Louisville, Kentucky 40208
502-636-4615
Counsel for Mark Yarmey